William J. Murphy and John J. Murphy, Appellees, v. Traders Live Stock Exchange et al., Appellants.

Gen. No. 19,639.

1. INJUNCTION, § 155*—*when improper to temporarily enjoin exchange from blacklisting member.* Where a live stock exchange suspends a member on his failure to reimburse a nonmember for the conversion of hogs, it is improper to temporarily enjoin the exchange from maintaining a boycott or blacklist against the member where the injunctional order states that it does not find whether or not the defendants have been guilty of the acts enjoined and the allegations of the bill are fully answered by affidavits.

2. BOARDS OF TRADE AND EXCHANGES, § 18*—*how notice to appear at meeting to answer charges is construed.* A notice by a live stock exchange to a member to appear at a meeting on January 3, 1912, to answer a charge of violating the rules, will be regarded as a notice to appear on such day in the year 1913 where the controversy did not begin until October, 1912.

Appeal from the Superior Court of Cook county; the Hon. MARCUS A. KAVANAGH, Judge, presiding. Heard in this court at the March term, 1913. Reversed. Opinion filed November 3, 1913.

WORTH E. CAYLOR, for appellants.

LITZINGER, McGURN & REID, for appellees.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The Traders Live Stock Exchange is a corporation organized not for pecuniary profit, whose members are engaged in buying live stock at the Union Stock Yards, Chicago. The complainants, William J. and John J. Murphy, were engaged in buying live stock at the Stock Yards and were members of said Exchange. October 5, 1912, an employe of complainants was driving hogs in one of the alleys at the Stock Yards, when they became mingled with hogs of Swift & Co., a corporation not a member of said Exchange. Swift & Co. claimed that they by such mingling lost four hogs.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

William J. Murphy made an investigation and found that his firm had one hog of Swift & Co., which was returned, but he refused to return any more hogs. Swift & Co. then made a complaint to the Exchange. The Exchange notified the Murphys that such complaint had been made and the Murphys took the position that the Exchange had nothing whatever to do with a transaction between them and Swift & Co. The board of directors of the Exchange met November 14, 1912, to consider and decide the controversy as to the hogs between Swift & Co. and the Murphys. At this meeting William J. Murphy appeared and presented evidence for his firm, and Swift & Co. also presented evidence, and the board, December 7, 1912, resolved and decided that the Murphys should pay to Swift & Co. forty-five dollars. No objection was made by either party to the authority of the board to hear and decide the controversy. The board notified the Murphys of their decision and December 11 wrote them that unless the claim of Swift & Co. for forty-five dollars was paid within five days they would be suspended from all the rights and privileges of the Exchange. December 24, 1912, a complaint in writing was presented to the board by G. R. Hebert, stating that the Murphys had not paid but refused to pay said sum of forty-five dollars to Swift & Co. A notice was then given by the board to the Murphys to appear before the board at a meeting to be held *January 3, 1912,* to answer the charge of violating the rules and by-laws of the Exchange. The year 1912 was evidently inserted in the notice by mistake for 1913, and that it was so inserted by mistake was known to the Murphys, because the controversy between them and Swift & Co. did not begin until October 5, 1912. The notice must therefore be regarded as a notice to appear January 3, 1913. The complainants did not attend the meeting and the board of directors ordered that they be suspended.

In their bill complainants set out the facts above

stated and allege that the defendants have maintained a boycott or blacklist against the complainants. The bill makes the Exchange, the directors thereof and E. C. Adams defendants. The order for a temporary injunction from which this appeal is prosecuted restrains the defendants, "from in any manner intimidating or coercing or threatening any person doing or intending to do business with the said William J. Murphy and John J. Murphy, doing business as Murphy Bros. & Company, with a view to preventing said persons from buying or selling to the said William J. Murphy and John J. Murphy, or preventing or influencing such persons in their business dealings with said William J. Murphy and John J. Murphy." The order contains the following provision:

"The court, however, does not find whether or not the above named defendants have been guilty of intimidating, coercing or threatening persons doing or intending to do business with the said William J. Murphy and John J. Murphy with a view to preventing persons from buying or selling to the said William J. Murphy and John J. Murphy, or preventing or influencing such persons in their business dealings with said William J. Murphy and John J. Murphy."

The bill is sworn to by William J. Murphy.

The affidavits of the defendants are, we think, a full and complete answer to the allegations of the bill in relation to the acts and conduct of the defendants enjoined by the order. The court in the order states in terms that it does not find whether or not the defendants have been guilty of the acts they are restrained from committing by the order of injunction.

We think that in view of this statement of the court, and of the further fact that the allegations of the bill as to the acts enjoined by the injunction are met and fully answered by the affidavits of the defendants, that the injunction should not have been granted.

The order granting a temporary injunction is reversed.

*Reversed.*